Fred GOINS, Petitioner,

v.

Joseph R. BRIERLEY, Respondent.

Civ. A. No. 70-370.

United States District Court, W. D. Pennsylvania.

April 6, 1971.

Pennsylvania, filed a petition for writ of Habeas Corpus in this Court on March 31, 1970. In his petition he related that he was convicted on nine counts of burglary and receiving stolen goods in 1947 in the Court of Common Pleas of Allegheny County (Numbers 6, 21, 22, 23, 24, 25, 28, 36, and 44, April Term, 1947). On May 15, 1947, he was sentenced to nine consecutive terms of 1 to 2 years. No appeal was taken from the convictions.

Petitioner alleges that his conviction in 1947 resulted from the introduction into evidence of a confession which he contends was not voluntary and in fact, was coerced. He also contends that he objected to the use of the confession but that it was introduced over his objection.

Relator first raised this issue in the Court of Common Pleas of Allegheny County at No. 2926, July Term, 1956, at which time the Honorable William H. McNaugher dismissed a petition for writ of habeas corpus.[1]

Another petition was filed and a hearing was held at No. 2860 July Term, 1965, in the Court of Common Pleas of Allegheny County. President Judge Ellenbogen on March 17, 1967, in an Opinion stated that the matter would have been res adjudicata except for Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 2d 908 (1964) which had meanwhile been decided. He apparently conducted a complete hearing where petitioner testified.[2]

At the hearing at 2860 July Term, 1965, the District Attorney told the Court that after diligent search a trial record had not been found, that the trial Judge was deceased and that there was no person living who had participated in the trial who had any recollection of it. The attorney who defended Goins was living but had no recollection. There were no

---

## OPINION and ORDER

McCUNE, District Judge.

The petitioner, a prisoner at the State Correctional Institution at Pittsburgh,

---

1. We have no record of this hearing. Petitioner testified in a later hearing that if there was a hearing he was not present. The Court Order of Judge McNaugher recites that a hearing was held.

2. We have had access to the record of the hearing held before Judge Ellenbogen and

have reviewed it. Petitioner testified that several police officers beat him with fists and blackjacks until he confessed, that there was no evidence against him except the confession and that the Judge did not refer to the confession in his charge to the jury.

police records. The reporter was dead. The District Attorney was aged and retired. Since there was nothing before him except the uncorroborated testimony of relator taken 18 years after his conviction, Judge Ellenbogen concluded that the petition should be dismissed because he found relator's testimony unworthy of belief. He ruled that under Commonwealth ex rel. Howard v. Claudy, 175 Pa. Super. 1, 102 A.2d 486 (1954), the relator had the burden of proof and he had not carried the burden.

Relator then filed a petition with the Superior Court of Pennsylvania for leave to appeal that Order nunc pro tunc at No. 669 Miscellaneous Docket. This petition was denied per curiam August 24, 1967.

On September 1, 1967, relator filed a petition with the Supreme Court of Pennsylvania for leave to appeal from the Order of Judge Ellenbogen nunc pro tunc at No. 2948 Miscellaneous Docket. On December 13, 1967, Mr. Justice Jones granted this petition and remanded the matter to the trial Court for the purpose of conducting a hearing *solely* to determine whether counsel for the petitioner, contrary to petitioner's instructions, had failed to file a timely appeal from Judge Ellenbogen's Order of March 17, 1967. Pursuant to this Order, a further hearing was held on September 11, 1968. On October 8, 1968, Judge Ellenbogen found that appellant's counsel had failed to file an appeal from the dismissal of the petition for writ of habeas corpus.

On October 8, 1968, Mr. Chief Justice Bell granted the appellant's petition for leave to proceed on appeal nunc pro tunc provided the appeal was filed within a reasonable time of the date of his Order of October 8, 1968.

(Meanwhile an entirely separate petition for writ of habeas corpus was filed in the District Court for the Western District of Pennsylvania, alleging that the Order of the Supreme Court of December 13, 1967, had been improper. On June 18, 1968, Judge Marsh dismissed this petition.)

Accordingly, an appeal was filed with the Supreme Court on October 17, 1968, which was remitted to the Superior Court March 11, 1969. On June 5, 1969, in a per curiam Order, the Superior Court affirmed Judge Ellenbogen.

At this point Judge Ellenbogen had been affirmed in his refusal to grant the writ on the allegation of relator that a confession had been used in the trial in 1947 which was involuntary.

Meanwhile, events transpired which added many years to the sentences which relator was serving as the result of his 1947 convictions for burglary. As will be observed later on, the additional sentences and a Pennsylvania Supreme Court decision in 1968 no doubt motivated relator to raise the question again which had apparently been settled finally on June 5, 1969.

As has already been observed the sentences of May 15, 1947, in Allegheny County would have extended to at least March 15, 1956, if the minimum had prevailed and to March 15, 1965, if the maximum had been applied.

On September 5, 1947, relator escaped from the Allegheny County Workhouse and committed two robberies while free and was sentenced on the two charges to terms of 5 to 10 years in the state correctional institution at Pittsburgh to run consecutively at the expiration of the previous 9 to 18 year sentences. He was also sentenced to a term of 1 to 2 years for prison breach. (The records we have do not show whether this sentence was concurrent or not).

In July, 1949, relator escaped again. While free he committed robbery in Ohio where he was sentenced to a term of 25 years. In March, 1953, the Ohio authorities returned relator to Pennsylvania where he was tried for the prison breach of 1949 and sentenced to 3 to 6 years in a state correctional institution. (The records we have do not show whether this sentence was concurrent with the others or not).

The expiration dates of the original 9 to 18 years sentences were recalculated

taking into account the time relator was an escapee so that the minimum sentences expired February 28, 1960, and the maximum expired February 28, 1969. Further, the dates of all subsequent sentences including a sentence of 5 to 10 years for assaulting another prisoner imposed in May of 1960 were adjusted accordingly.

(Part of the record is reconstructed from the Opinion of Justice Roberts of the Pennsylvania Supreme Court in Commonwealth ex rel. Goins v. Rundle, 411 Pa. 590, 192 A.2d 720 (1963) infra.)[3]

Relator then sought relief by habeas corpus in the United States Court for the Eastern District of Pennsylvania seeking there a discharge from custody or recomputation of his sentences. On April 27, 1964, Judge Luongo denied the petition without hearing. This Order was affirmed in Commonwealth of Pa. ex rel. Goins v. Rundle, 338 F.2d 1015 (3rd Circuit 1965).

Undaunted, relator filed another petition for habeas corpus at No. 741, July Term, 1964 in the Court of Common Pleas of Allegheny County attacking the recomputation of his sentences. This petition was dismissed without hearing on April 22, 1964.

Realizing that he now faced sentences which might not expire until February 28, 1970, at a minimum and perhaps February 28, 1989, at a maximum (we presently have no accurate computation of all the additional sentences) and realizing that he had failed in all of his efforts at having his sentences recomputed, the relator in his petition of March 31, 1970, sought to reopen the original issue, i. e., that an involuntary confession was used against him and his conviction was thus invalidated and further, sought to have the Court apply the time he had served on his 1947 sentences to the valid sentences he was serving for prison breach and robbery.

The judge to whom the petition of March 31, 1970, was assigned, dismissed it as moot because he observed that the original sentences of 9 to 18 years even as recomputed had expired on February 28, 1969. He concluded that it was unnecessary to consider the question and by Order of June 1, 1970, the petition was dismissed.

The Circuit Court on October 8, 1970, granted relator's petition for appeal and remanded the case for reconsideration in the light of United States ex rel. Di Rienzo v. New Jersey, 423 F.2d 224 (1970 3rd Cir.)

A rule was then issued calling on the District Attorney to show cause why a hearing should not be held.

The case was assigned to the undersigned and we presided at the hearing.[4]

The petitioner filed a brief in which he contended that it was the Commonwealth's burden to prove that the confession was not used (or that it was voluntary) and this burden arose merely because he had made the allegation. Since the Commonwealth could not prove anything at all, he argued that his 1947

---

3. Justice Roberts' Opinion states that shortly prior to the expiration date of the recomputed minimum sentence, appellant was given an application for parole which he destroyed asserting that he did not want to prejudice his rights by completing the form. There followed a great deal of litigation in which relator attempted to have his sentences recomputed. Some of it is related in Commonwealth ex rel. Goins v. Rundle, just recited, in which the Supreme Court of Pennsylvania refused to recompute the sentences already mentioned.

4. At the hearing the District Attorney of Allegheny County appeared. He stated that he could not file an Answer since all he could say was what he had said before, i. e., that he had no record and had found no one who had any knowledge of the case. He relied on Judge Ellenbogen's Opinion. Petitioner elected to proceed without appointed counsel. Although the Public Defender was notified of the hearing (he had previously represented relator), he elected not to appear. We permitted petitioner to testify at will. He merely contended that the police officers were in his opinion still living and should be called. The District Attorney contended he could find none who had any recollection of the matter.

convictions were automatically invalidated and all time served under them should be applied to the valid sentences for robbery and prison breach, thus satisfying the required time in prison and consequently that he was entitled to immediate release.

The District Attorney of Allegheny County appeared and opposed the petition but admitted that he could find no record of the trial and no living person with any recollection of the events.

With this recital in mind, we will reconsider the matter in the light of *Di Rienzo*.

Di Rienzo holds that a District Court has jurisdiction to inquire whether one held in custody, who faces serving a subsequent sentence, would under state law, be entitled to credit on that sentence for time served on an alleged defective sentence even though that sentence has expired. If he would be entitled to such credit, the District Court has jurisdiction to examine the merits of his challenge even though the sentence he challenges has expired. *Di Rienzo* cited Cappetta v. Wainwright.

In Cappetta v. Wainwright, 406 F.2d 1238 (5th Cir.) cert. denied 396 U.S. 846, 90 S.Ct. 55, 24 L.Ed.2d 96 (1969) petitioner claimed that setting aside his fully served sentence would entitle him to immediate release from a second sentence he was then serving. The Court reversed the District Court's dismissal for want of jurisdiction and remanded the case for a determination whether the setting aside of the fully served sentence would result in the petitioner receiving credit in some degree on his second sentence.

We must inquire therefore whether relator under Pennsylvania law would be given credit on the sentence he is now serving for prison breach and the robberies committed during his freedom from prison, if his convictions on the burglaries were actually set aside.

The Act of August 14, 1963, P.L. 841, 19 P.S. 898 provides the following:

"Any person who has been convicted of an offense in any court in this Commonwealth and sentenced to a term of imprisonment shall be given credit toward the service of his sentence for any days spent in custody on *this offense* (italics supplied) prior to the imposition of his sentence, including any days spent in custody on this offense prior to the entry of bail."

It is apparent that relator has spent no time in prison awaiting sentence for prison breach and for the robberies committed during his freedom for which he has not been given credit. It is also apparent that credit is to be given for time served only if it is served toward "this offense" meaning the offenses of prison breach and robbery.

The question however, is made more complicated by the Act of May 28, 1937, P.L. 1036, 19 P.S. 894, which provides the following:

"From and after the passage of this act, all sentences for criminal offenses of persons who at the time sentence is imposed are held in custody in default of bail, or otherwise, shall begin to run and be computed from the date of commitment for the offense for which said sentence shall be imposed, unless the person sentenced shall then be undergoing imprisonment under a sentence imposed for any other offense or offenses, in which case the said sentence shall begin to run and be computed, either from the date of imposition thereof or from the expiration of such other sentence or sentences, as the court shall, in its discretion, direct."

With both of these sections before it the question whether relator should be given credit against a valid sentence for time spent on an invalid but unrelated sentence was considered in United States ex rel. Smith v. Rundle, 285 F.Supp. 965, Eastern District of Pennsylvania (1968). It was held that there is no constitutional requirement that the time

which a relator spends under an invalid sentence must be credited to a valid sentence arising from unrelated offenses.

The Opinion in Smith distinguished Hill v. Holman, 255 F.Supp. 924 (M.D. Ala.1966). Hill had been resentenced for the same crime which had led to his serving part of an invalid sentence. The Court stated that in cases where the petitioner had been resentenced for the same crime after an invalidation of a conviction, Courts have consistently held it to be denial of due process to treat time served on a defective sentence as "dead time" and not allowable as credit when a prisoner is retried and resentenced. In the case where the credit is sought to be applied to a sentence on an unrelated crime however, there is no requirement that credit be extended as a matter of due process; otherwise a situation could be created where a person might have several years of prison time to apply to a crime for which he had not yet been prosecuted.

To the same effect, see Bauers v. Yeager, 261 F.Supp. 420, 421 (D.N.J. 1966).

■ However, the Supreme Court of Pennsylvania in Commonwealth ex rel. Ulmer v. Rundle, 421 Pa. 40, 218 A.2d 233 (1966) decided to the contrary applying 19 P.S. 894 and held that where the valid sentence is postponed until the invalid sentence has run a relator can in fact claim credit served on an invalid sentence even though it relates to an unconnected offense.

This would seem to be the more just result and would seem to follow the direction to which *Di Rienzo* points.

This brings us to the merits of the petition. The petitioner has alleged, we repeat, that a confession was used in his 1947 trial and it was involuntary. He has also alleged that he objected to it and it was used over his objection and he contends that his bare allegation, without more, places the burden on the Commonwealth to produce his trial record and show that his confession was not used or that it was determined to

be voluntary. He relies heavily on Commonwealth ex rel. Butler v. Rundle, 429 Pa. 141, 239 A.2d 426 (1968) which we will discuss in a moment.

If it is true as he contends that he must be discharged because the Commonwealth cannot proceed, then all that one in prison need do is make an allegation that a confession was used against him which was involuntary. Thereupon, unless the record can be found or reconstructed he will automatically go free no matter how old the trial, how quickly the participants grow senile or die, no matter whether fire or flood destroys the records, no matter how quickly memories fade. He will also go free no matter how incredible or inconsistent his story or his behavior.

In the hearing afforded him in the Common Pleas Court of Allegheny County, the relator testified that the Judge in his charge to the jury did not mention the voluntariness of the confession or the lack of it. Judge Ellenbogen commented that this was incredible in his opinion because while judges err, he knew of no judge who would omit reference in his charge to a confession claimed to be involuntary and coerced.

Commonwealth ex rel. Butler v. Rundle, 429 Pa. 141, 239 A.2d 426 (1968) upon which relator depends concerned a Jackson-Denno hearing where the confession was available and the only question was whether it was voluntary. It did not concern a situation where there was no record at all. The trial judge in Butler stated at the hearing that relator should go forward and introduce his evidence first. The Supreme Court of Pennsylvania stated that the trial judge had incorrectly placed the burden of production on relator; that in any trial today the prosecution must show that the confession was voluntary. The Court continued, saying

" * * * the primary significance of the burden of production is to end the inquiry when the party with the burden can present no evidence. This rarely, if ever, occurs at Jackson-Den-

no hearings, where both sides can usually come forward with an account of the circumstances under which the confession was given. Such was the case here. The situation where the allocation of the production burden is decisive is the virtually inconceivable one in which neither party presents evidence. *Although the allocation in the instant case did not matter in the least,* henceforth the burden of production should be on the prosecution." (italics supplied).

The above may be the law in Jackson-Denno hearings where a record exists and it is apparent that a confession was used, but we refuse to follow it in the case before us. To begin with the language was dictum and not part of the holding nor was the discussion essential to the decision of the case.

Furthermore, it is obvious that Commonwealth ex rel. Butler v. Rundle decided on March 15, 1968, must have been before the Superior Court of Pennsylvania and must have been known to that Court when it affirmed Judge Ellenbogen on June 9, 1969, on the very point which is before us this day.

Judge Ellenbogen has already found relator's testimony incredible and on a review of the record of the hearing before him, we agree with him. But the important point is that Judge Ellenbogen was affirmed more than a year after Commonwealth ex rel. Butler v. Rundle was decided. This convinces us that there is still law to be found in Commonwealth ex rel. Howard v. Claudy, 175 Pa.Super. 1, 102 A.2d 486, supra, the case upon which Judge Ellenbogen relied and which holds that a judgment of conviction carries with it a presumption of regularity.

 Except in unusual circumstances, not present here, the allocation of the burden of production rule set forth in Butler will not apply where there is no evidence whatever that a confession was used save the allegation of the relator. Something more is required to overcome the presumption of regularity which a judgment of conviction carries.

Accordingly, we will dismiss the petition.